Luis A. PENARANDA, Plaintiff,

v.

Jo C. CATO, Individually and in Her Official Capacity as Director of the Child Care Licensing Section of the Department of Human Resources; Department of Human Resources; State of Georgia; John Doe Employees, Whose True Names Are Unknown, Individually and in Their Official Capacity as Employees of the Department of Human Resources; and John T. Palmer, Individually and in His Official Capacity as Magistrate of Burke County, Defendants.

Civ. A. No. CV189–200.

United States District Court,
S.D. Georgia,
Augusta Division.

June 29, 1990.

---

Chris G. Nicholson, Augusta, Ga., for plaintiff.

Mary Foil Russell, Asst. Atty. Gen., Atlanta, Ga., Jiles M. Barfield, Vidalia, Ga., for defendants.

## ORDER

BOWEN, District Judge.

Plaintiff, Luis A. Penaranda, brings this case pursuant to the Court's civil rights jurisdiction under 28 U.S.C. § 1343. Plaintiff was formally the licensed operator of a day care center in Waynesboro, Georgia. Within months of the opening of plaintiff's day care center, a parent reported to local authorities that plaintiff had sexually molested her child who was enrolled at plaintiff's day care center. Plaintiff was questioned by an employee of defendant, the Department of Human Resources (DHR), concerning these allegations. Plaintiff denied each and every allegation. When no apparent action was taken by the local authorities, the parent related the alleged incident to defendant John T. Palmer, Magistrate for Burke County, Georgia. A warrant for plaintiff's arrest was executed by Magistrate Palmer on August 24, 1989. Plaintiff was allowed to post a property bond in the amount of $25,000.00. At the time plaintiff's complaint was filed, both administrative and criminal state proceedings were pending.

In his complaint, plaintiff alleges that the arrest warrant was executed with the aid and advice of defendants, employees of

DHR whose names were unknown to plaintiff at the time he filed his complaint. In addition, plaintiff alleges that the DHR employees did not act in good faith in aiding the issuance of the arrest warrant and did not follow proper investigative methods prescribed by DHR policy. Plaintiff also alleges that correspondence from defendants Jo C. Cato, Director of the Child Care Licensing Section of the Department of Human Resources, and the Department of Human Resources has caused the "purposeful destruction of the business of plaintiff without due process of law." (Complaint, paragraph 22). Moreover, plaintiff maintains that defendant Palmer was not a neutral and detached magistrate and that the arrest warrant he issued "caused the violation of plaintiff's rights." (Complaint, paragraph 7). Plaintiff prays that the Court enjoin the defendants from acts which are allegedly prohibited by the Constitution and that the Court award damages under 42 U.S.C. §§ 1983, 1985, and 1988.

Currently pending before the Court are three motions filed by defendants: motion to dismiss filed by John T. Palmer, motion for summary judgment filed by John T. Palmer, and motion to dismiss or in the alternative, motion for stay of proceedings, filed by Jo C. Cato and the State of Georgia, Department of Human Resources. Plaintiff has failed to file a response to either of the two motions to dismiss.

Since I will rely upon matters outside the pleadings in addressing defendant Palmer's motions, I will resolve the issues presented by these motions through defendant Palmer's motion for summary judgment. See Fed.R.Civ.P. 12(b).

■ Summary judgment should be granted only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing that there is no genuine dispute as to any material fact in the case. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Clemons v. Dougherty County,*

*Ga.*, 684 F.2d 1365, 1368 (11th Cir.1982). The party moving for summary judgment may meet this burden by showing that the non-movant has failed to make a showing sufficient to establish the existence of an element essential to the non-movant's case, and on which the non-movant will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If there is any factual issue in the record that is unresolved by the motion for summary judgment, then the Court may not decide that matter. *See Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir.1981). All reasonable doubts must be resolved in favor of the party opposing summary judgment. *Casey Enterprises v. American Hardware Mutual Insurance Co.*, 655 F.2d 598, 602 (5th Cir.1981). When, however, the moving party's motion for summary judgment has pierced the pleadings of the opposing party, the burden then shifts to the opposing party to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1985). This burden cannot be carried by reliance on the pleadings, or by repetition of the conclusory allegations contained in the complaint. *Morris v. Ross*, 663 F.2d 1032, 1033 (11th Cir.1981). Rather, the opposing party must respond by affidavits or as otherwise provided in Fed. R.Civ.P. 56.

The file indicates that the clerk notified the plaintiff of the consequences for failure to respond to the motion for summary judgment. *Griffith v. Wainwright*, 772 F.2d 822 (11th Cir.1985). The plaintiff having had a reasonable opportunity to respond to the motion, I will now rule on defendant Palmer's motion for summary judgment.

Plaintiff brought this action against defendant Palmer in his official capacity as Magistrate for Burke County, Georgia. Plaintiff contends that his due process rights to a neutral and detached magistrate were purposefully violated because Mr. Palmer issued the arrest warrant against plaintiff for improper reasons. Plaintiff alleges that the arrest warrant was issued

against him as punishment or as a method to force collection of a debt which plaintiff owed to a hardware store owned by defendant Palmer's son. In support of his allegations, plaintiff cites to deposition testimony of defendant Palmer which reveals that defendant Palmer issued the arrest warrant without any prior investigation into the truth of the allegations made against plaintiff.

Defendant Palmer, on the other hand, maintains that he issued the arrest warrant against plaintiff under circumstances which he believed constituted probable cause. He denies any ulterior motives in the issuance of the warrant. In support of his motion for summary judgment, defendant Palmer argues that he is entitled to absolute judicial immunity from liability for the acts complained of by plaintiff.

"In enacting 42 U.S.C. § 1983, Congress did not abrogate the doctrine of judicial immunity." *Harris v. Deveaux,* 780 F.2d 911, 914 (11th Cir.1986). Defendant Palmer correctly notes the two-part test established by the United States Supreme Court in *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), for determining whether a judge enjoys immunity from liability under § 1983 for actions he or she takes. First, whether the challenged actions were performed within the judge's "judicial capacity." *Id.* at 360, 98 S.Ct. at 1106. Second, whether the judge acted in the "clear absence of all jurisdiction." *Id.* at 357, 98 S.Ct. at 1105.

█ To support their holdings that a judge acted in a judicial capacity, the Fifth and Eleventh Circuits have focused upon the following four factors:

(1) the precise act complained of ... is a normal judicial function; (2) the events involved occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity.

*Harper v. Merckle,* 638 F.2d 848, 858 (5th Cir. Unit B 1981); and *Harris v. Deveaux,* 780 F.2d 911, 914 (11th Cir.1986). The facts of the instant case satisfy each of the four factors enumerated above. As argued by defendant Palmer, it is a normal judicial function for magistrates to issue arrest warrants. Defendant Palmer has presented affidavit testimony of the parent, who made the allegations against plaintiff, which states that she "presented herself to the magistrate ... [and] related the sexual activities which my son had described." (Wright Affidavit, p. 2). Consequently, I conclude that the confrontation in this case arose directly out of a visit to the judge in his official capacity. As the Fifth Circuit stated in *Harper v. Merckle,* 638 F.2d at 856 n. 9, "we can envision no situation where a judge acts after he is approached qua judge by parties to a case-that could possibly spawn a successful § 1983 suit."

Moreover, in the instant case, it cannot be said that defendant Palmer acted in the clear absence of all jurisdiction. O.C.G.A. § 15–10–2(1) provides the following:

Each magistrate court and each magistrate thereof shall have jurisdiction and power over the following matters:

(1) The hearing of applications for and the issuance of arrest and search warrants.

To defeat absolute judicial immunity, it is not enough that the judge's acts exceeded his or her jurisdiction; rather, the question is whether there was a clear absence of all subject matter jurisdiction with respect to the judge's actions. *Stump v. Sparkman,* 435 U.S. at 356 n. 6, 98 S.Ct. at 1104 n. 6 (citations omitted).

A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he acted in the "clear absence of all jurisdiction."

*Id.* at 356–357, 98 S.Ct. at 1105 (citations omitted). Therefore, I conclude that defendant Palmer was acting within his jurisdiction as Magistrate of Burke County, Georgia.

Given the facts of the instant case, I find that defendant Palmer is entitled to absolute judicial immunity from plaintiff's § 1983 claims. In addition, for the reasons previously discussed, I also find that defen-

dant Palmer is absolutely immune from plaintiff's claim under § 1985(3). *See Scott v. Hayes*, 719 F.2d 1562 (11th Cir.1983). Accordingly, defendant Palmer's motion for summary judgment is GRANTED. Defendant Palmer's motion to dismiss is DENIED on the grounds that it is now moot.

▄▄▄ Next, I will address defendants', Jo C. Cato and the State of Georgia, Department of Human Resources (DHR), motion to dismiss. As stated earlier, plaintiff has failed to file a response to the defendants' motion to dismiss.[1] A court must deny a defendant's motion to dismiss a plaintiff's complaint unless it finds that "... the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Moreover, in ruling on a motion to dismiss, a federal district court "... must accept all of the well-pleaded allegations of the complaint as true and construe the complaint liberally in the light most favorable to plaintiff." *Robb v. City of Philadelphia*, 733 F.2d 286, 290 (3rd.Cir.1984) (citing *Gomez v. Toledo*, 446 U.S. 635, 636 n. 3, 100 S.Ct. 1920, 1921 n. 3, 64 L.Ed.2d 572 (1980)). I will apply these standards in evaluating defendants' motion to dismiss.

▄▄▄ Defendant Jo C. Cato is the Director of the Child Care Licensing Section of the Georgia Department of Human Resources. Defendant Cato is sued both in her individual and official capacity under 42 U.S.C. §§ 1983 & 1985(3). As discussed previously, plaintiff contends that defendant Cato authored certain correspondence which caused the purposeful destruction of plaintiff's day care business without due process of law. Apparently, plaintiff is referring to a letter written by defendant Cato dated September 18, 1989, which notified plaintiff that his license to operate a day care center had been revoked "for failure to meet the Rules and Regulations for Day Care Centers" mandated by Georgia law. Defendant Cato's letter also informed plaintiff that his license was being revoked due to complaints received by the child care licensing staff, as well as, the results of an independent investigation performed by the licensure staff and the Burke County Department of Family and Children Services. Moreover, the letter disclosed the alleged incidents of child molestation uncovered during the investigation of plaintiff's day care center. Plaintiff also contends that certain employees of the defendant, whose names were unknown to plaintiff at the time of filing his complaint, acted in bad faith and did not follow proper investigative methods required by DHR policy in "aiding and abetting the issuance of a criminal arrest warrant" against plaintiff. (Complaint, paragraph 21).

In support of their motion to dismiss, defendants Cato and DHR correctly cite *Will v. Michigan Department of State Police*, 491 U.S. ——, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), for their contention that state agencies, and state officials sued in their official capacities are not "persons" within the meaning of 42 U.S.C. § 1983. In *Will* the United States Supreme Court held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Department of State Police*, 109 S.Ct. at 2312. In reaching its decision, the Supreme Court explicitly relied upon three factors: (1) the common usage and plain meaning of the word "person" as used in § 1983; (2) the lack of a "clear statement" that Congress intended to realign the delicate federal/state balance of power by enacting § 1983; and (3) the absence of indicia demonstrating that it was Congress' purpose to override the immunity granted to states under the Eleventh Amendment of the United States Constitution. *Will v. Michi-*

---

**1.** Rule 6.2 of the Local Rules for the United States District Court for the Southern District of Georgia states the following:

Unless the assigned judge prescribes otherwise, each party opposing a motion shall serve and file his responses, reply memorandum, affidavits or other material, within ten

(10) days of service of the motions, except that in cases of motions for summary judgment, the time shall be twenty (20) days after service of the motion. *Failure to respond shall indicate that there is no opposition to a motion.*

(Emphasis supplied).

*gan Department of State Police,* 109 S.Ct. at 2308–11.

Therefore, I conclude that neither defendant DHR nor defendant Cato, in her official capacity, is a "person" under §§ 1983 and 1985(3). Accordingly, defendants DHR's and Cato's motion to dismiss is GRANTED with respect to plaintiff's claim for damages against DHR and Jo C. Cato, in her official capacity.

Next, defendant Cato moves the Court to dismiss the claims brought by plaintiff under 42 U.S.C. §§ 1983, 1985(3) and 1988 against her in her individual capacity. As noted by defendant Cato, governmental officials are entitled to qualified immunity from liability for actions taken within the scope of their discretionary duties and responsibilities. The United States Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established an objective test to be applied by courts for determining when governmental officials enjoy qualified immunity.

> [B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id.* at 817–18, 102 S.Ct. at 2738.[2] However since the case is before me in the posture of a motion to dismiss, it is unnecessary and improper to resolve the issue of defendant Cato's individual capacity liability on the factually dependent affirmative defense of qualified immunity.

More important for purposes of addressing defendant Cato's motion to dis-

miss plaintiff's §§ 1983 and 1985(3) claims against her in her individual capacity is the fundamental requirement of such claims, namely that plaintiff allege a deprivation of a federally protected right. 42 U.S.C. § 1983. "Unless the complaint states a compensable claim for relief under the Federal Constitution, it should not survive a motion to dismiss." *Butz v. Economou,* 438 U.S. 478, 507–508, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978). The single paragraph in plaintiff's complaint which mentions defendant Cato reads as follows:

> That subsequent thereto [the issuance of the arrest warrant against plaintiff and the DHR investigation] certain correspondence from the Defendants, Jo Cato and the Department of Human Resources has caused the purposeful destruction of the business of the plaintiff without due process of law.

(Complaint, paragraph 22). Apparently, plaintiff is referring to the notice of license revocation signed by defendant Cato, as Director of Child Care Licensing Section of the Department of Human Resources, and dated September 18, 1989. The notice of revocation was given pursuant to the provisions of Georgia law. See O.C.G.A. §§ 49–5–12(*o*), 49–5–12(n), and 50–13–18(c). The notice informed plaintiff that the revocation of his license to operate a day care center would become effective thirty (30) days from receipt of the notice. The notice also outlined the causes for the revocation and the determination that such causes "constitute an egregious threat to the health and safety of vulnerable young children in care and are, therefore, not considered to be correctable." (Notice of Revocation, p. 3). In addition, the notice informed plaintiff that he had a right to request a hearing before the department within ten days of receipt of the notice.

---

**2.** Although not argued by counsel, it also appears that defendant Cato, as director of the Child Care Licensing Section of the Department of Human Resources, may also have absolute immunity from § 1983 liability for acts performed within the scope of her duties. *See Butz v. Economou,* 438 U.S. 478, 508–517, 98 S.Ct. 2894, 2911–2916, 57 L.Ed.2d 895 (1978) (recognizing that executive officials, who -while acting

within the scope of their executive capacity- make the discretionary decision to initiate administrative proceedings against a party, enjoy absolute immunity from suit); *See also Shepard v. Byrd,* 581 F.Supp. 1374, 1384–1385 (N.D.Ga. 1984) (holding that members of the State Board of Pharmacy were absolutely immune from liability under a § 1983 suit brought by a former pharmacist whose license had been revoked).

Although plaintiff's complaint is couched in general terms and fails to clearly allege specific facts in support of plaintiff's due process claim, it appears that plaintiff is alleging that the method used by defendant Cato to revoke his license violated his procedural due process rights. As previously discussed, defendant Cato was merely following state law when she issued the notice of revocation to plaintiff. Ironically, the notice of revocation which plaintiff complains about is required by state law to safeguard the procedural due process rights of persons in plaintiff's position. As stated by the United States Supreme Court in *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (citations omitted), "... it is fundamental that except in emergency situations ... due process requires that when a State seeks to terminate an interest such as that here involved, it must afford 'notice and opportunity for hearing appropriate to the nature of the case' before the termination becomes effective." *Id.* at 542, 91 S.Ct. at 1591. Although plaintiff does not specifically challenge the constitutionality of the Georgia statutes which provide for the action taken by defendant Cato, he appears to complain that defendant Cato violated his due process rights by issuing the notice of revocation prior to conducting a hearing on this matter. However, the notice of revocation explicitly stated that plaintiff's day care center license would not be revoked until 30 days after receipt of the notice. The notice also informed plaintiff of his right to request a hearing before the department within ten days from receipt of the notice. Therefore, both notice and an opportunity for a hearing were given prior to the time of plaintiff's license revocation. *See Tollett v. Laman,* 497 F.2d 1231, 1234 n. 6 (8th Cir.1974) (citing *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90). More-

over, I conclude that the severity of the charges made against plaintiff and the alleged incidents of prohibited conduct uncovered by the DHR's investigation demonstrate that this is an emergency situation justifying a less stringent application of the procedural due process requirements. *See Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Fahey v. Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947); *Ewing v. Mytinger & Casselberry,* 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950).[3] Therefore, even after construing plaintiff's complaint liberally, I conclude that it fails to allege facts which establish that defendant Cato violated plaintiff's due process rights. Moreover, defendant Cato cannot be held liable, under the theory of respondeat superior, for plaintiff's civil rights claims alleging constitutional violations committed by other employees of defendant DHR. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Accordingly, defendant Cato's motion to dismiss all claims brought against her in her individual capacity is GRANTED.

In addition, since plaintiff fails to allege any past or ongoing violation of his constitutional rights, defendants' motion to dismiss plaintiff's claim for injunctive relief is also GRANTED.

In summary, defendant Palmer's motion for summary judgment is GRANTED. Defendant John T. Palmer's motion to dismiss is DENIED on the grounds that it is moot. Defendants', Jo C. Cato and the Department of Human Resources, motion to dismiss is GRANTED.

ORDER ENTERED.

---

**3.** O.C.G.A. § 50–13–18(c)(1) provides the following:

> No revocation, suspension, annulment, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency has sent notice, by certified mail to the licensee, of individual facts or conduct which warrant the intended action and the licensee has been given an opportunity to show compliance with all lawful require-

ments for the retention of the license except where:

> The agency finds that the public health, safety, or welfare imperatively requires emergency action and incorporates a finding to that effect in its order, in which case summary suspension of a license may be ordered pending proceedings for revocation or other action, which proceeding shall be promptly instituted and determined.